## MOORHEAD v. CURTIS PUB. CO.

### No. 364.

District Court, W. D. Kentucky,
Louisville Division.

Jan. 22, 1942.

William S. Heidenberg, of Louisville, Ky., for plaintiff.

Doolan, Helm, Stites & Wood, of Louisville, Ky., for defendant.

MILLER, District Judge.

This action is before the Court on the defendant's motion to quash the service of summons herein, and the return of such service.

The plaintiff William C. Moorhead filed this action in the Jefferson Circuit Court at Louisville, Kentucky, against the defendant The Curtis Publishing Company for $10,-000 compensatory damages and an additional sum of $10,000 as punitive damages by reason of an alleged libel published in the September 14, 1940, issue of The Saturday Evening Post, a weekly periodical published by the defendant with wide circulation throughout the United States. The article complained of was entitled "Armageddon, Inc. by Stanley High", which dealt with an attack on an organization known as Jehovah's Witnesses. The plaintiff alleges that in connection with and as a part of the article the defendant published photographs of various members of Jehovah's Witnesses, and among the photographs so published was a photograph of the plaintiff together with members of his family with the following words in large type beneath it, namely: "'WITNESSES LOOK LIKE AVERAGE AMERICANS—AS, IN FACT, THEY ARE.' A typical Louisville family of Witnesses." Plaintiff states that he has never been affiliated with the organization

68

known as "Jehovah's Witnesses" and that the statement published under his photograph was false and subjected him to great humiliation and embarrassment and damage to his reputation. Four other similar actions were filed at the same time by Ethel Moorhead, his wife, and by three infant children, suing by their next friend. Summons was served "on The Curtis Publishing Company by delivering a copy of the within summons on G. A. Slemmons, Dis't Mgr., he being the Chief Officer found in this County at this time." The defendant removed all five of the actions to the United States District Court by proper proceedings and then entered in each case the motion now under consideration. Affidavits and exhibits were filed by both plaintiff and defendant in this action under an agreement that they would be considered as part of the record in each case.

The affidavits show that the defendant The Curtis Publishing Company is a Pennsylvania corporation with its chief office in Philadelphia, Pennsylvania; that it owns and publishes The Saturday Evening Post referred to in plaintiff's petition as well as other magazines and publications; that it owns the entire capital stock of a subsidiary corporation by the name of Curtis Publishing Company which is a Delaware corporation with its principal office in Philadelphia, Pennsylvania, and which is engaged in selling and distributing in many states throughout the country including Kentucky The Saturday Evening Post and other publications of the Pennsylvania Company, and also about forty other magazines of National circulation and prominence, published by other publishing houses; and that the directors and officers of the Pennsylvania corporation and the Delaware corporation are the same, although no other employee of either company is an employee of the other company. G. A. Slemmons who was the individual served with the summons was employed by the Delaware corporation as its district manager in Louisville, Kentucky, and was the designated agent for service of process of that corporation in Kentucky, but he was not employed by and had no connection with the defendant The Curtis Publishing Company, the Pennsylvania Corporation. Both corporations have offices in a building in Philadelphia owned by the Pennsylvania Company, but these offices are separate and the Delaware Company pays to the Pennsylvania Company a fair and reasonable rent for the quarters thus occupied.

The Pennsylvania Company maintains its editorial and publishing staffs, publishes the magazines referred to and mails them to its subscribers from its office in Philadelphia. In addition to its subscribers there is a demand throughout the country for the purchase, both wholesale and retail of its various magazines, and in order to meet this demand the Pennsylvania company organized the Delaware company to which it sells and delivers in Philadelphia its magazines which are to be distributed by the Delaware company throughout the other states where the magazines are sold. The Delaware company has qualified to do business in the state of Kentucky, but the Pennsylvania company has not. Each company engages exclusively in its own type of enterprise, maintains its own separate records and books of account and makes its own separate returns for taxation of their respective incomes and properties. Each company is separately served and managed by its own directors, officers and employees who are paid separate salaries by each company for the services rendered to that company. Where any service is rendered by one company to the other a full and fair charge for that service is made to the company thus served by the company which renders the service and makes the charge therefor. Any subscriptions solicited or received by the Delaware company for the publications of the Pennsylvania company are forwarded to the Pennsylvania Company's office and are not complete until accepted by that company at its home office at Philadelphia.

■ It is well settled that the ownership by a parent corporation of the stock in a subsidiary corporation which is engaged in business in a particular state does not by itself constitute a doing of business in that state by the parent corporation. This is true even though the names of the two corporations may be very similar. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Peterson v. Chicago, R. I. & P. Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Kentucky Electric Power Co. v. Norton Coal Mining Co., 6 Cir., 93 F.2d 923; Texas Co. of Mexico, S. A. v. Roos, 5 Cir., 43 F.2d 1, certiorari denied 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 794; United States Rubber Co. v. Query, D.C., 19 F.Supp. 191; Ayer & Lord Tie Co. v. Commonwealth, 208 Ky. 606, 271 S.W. 693; Missouri-Kansas Pipe Line Co. v. Hobgood, 244 Ky. 570, 51 S.W.2d 920.

■ It is also well settled that a corporation is not engaged in business in a foreign state merely because it has soliciting agents in that state or because its products are distributed in that state by other corporations under distributors' agreements. People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann. Cas.1918C, 537; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Ballard & Ballard Co. v. Munson S. S. Line, 6 Cir., 25 F.2d 252; Cannon v. Time, Inc., 4 Cir., 115 F.2d 423; Cincinnati Times-Star Co. v. France, 61 S.W. 18, 22 Ky.Law Rep. 1666; Barnes v. Maxwell Motor Sales Corp., 172 Ky. 409, 189 S.W. 444, Ann.Cas.1917E, 578; Tennessee Publishing Co. v. C. L. Walker & Co., 205 Ky. 420, 265 S.W. 941.

Plaintiff's counsel apparently concedes the correctness of the foregoing principles of law, but contends that they are not applicable to a situation where the subsidiary corporation is a separate entity in form only and the facts show that it is in reality a mere adjunct or instrumentality of the parent corporation and used by the parent corporation either to perpetrate a fraud upon the public or to transact its own business in such a way as to disregard the separate legal entities. This position is no doubt well taken, in that in many such instances the courts have disregarded the corporate form and have given effect to the real substance of the business as a whole. Examples of such rulings are found in Postal Telegraph Cable Co. v. Thornton, 153 Ky. 176, 154 S.W. 1100; Southern Railway in Kentucky v. Thomas, 28 Ky.Law Rep. 951, 90 S.W. 1043; American Chain Co. v. Stewart-Warner Speedometer Corp., D.C. S.D.N.Y., 56 F.2d 614. The rule was also recognized, although not applied by the Kentucky Court of Appeals in Missouri-Kansas Pipe Line Co. v. Hobgood, supra, [244 Ky. 570, 51 S.W.2d 921], where it was stated "this was not a case where the appellant utilized the services of its subsidiaries or their agents to perpetrate the wrongs or to transact the business out of which the litigation arose, [cases cited.] In those cases the service was sustained upon the ground that it was had upon the persons through whom the business was transacted."

■■ Giving full consideration to all of the facts in the present case, I am of the opinion that the general rule is applicable rather than the exception contended for by the plaintiff. There was no merger of the businesses of the two corporations; on the contrary, each corporation conducted its own type of business separately and apart from the other and with different personnel trained in their respective fields; not only was there a distinct separation of activities, but there was also a distinct separation of corporate books and records and it is not shown that the two corporations in their business relations with each other acted in any way other than as separate legal entities in a fair and reasonable way. As pointed out above, the stock ownership by the parent corporation does not by itself create a different situation. Plaintiff's affidavit in opposition to defendant's motion states that the business of the two corporations is so conducted as to deceive and mislead the public, and for the purpose of practicing a fraud on the public. This is a conclusion which is not supported by the admitted facts. In this connection it is to be noticed that the plaintiff himself was apparently not deceived in that the action is brought against The Curtis Publishing Company, the Pennsylvania corporation, which actually published the alleged libel. No cause of action is attempted to be asserted against Curtis Publishing Company, the Delaware corporation. Argument of counsel at the oral hearing indicated that the plaintiff's attorney made the usual and proper inquiry concerning the authorized agent for service of process of The Curtis Publishing Company but that he was incorrectly informed in being furnished the name of the agent for Curtis Publishing Company instead. In any event it would seem to be the rule that any such fraud upon the public by use of similar or identical names is to be considered in cases sounding in contract rather than in tort. Such alleged confusion obviously plays no part in damages suffered by the tortious act of another. Atlas Coal Co. v. Bryant, 263 Ky. 626, at pages 630 and 631, 93 S.W.2d 5; C. L. & L. Motor Express Co., Inc., v. Achenbach, 259 Ky. 228, 82 S.W.2d 335; Bergenthal v. State Garage & Trucking Co., 179 Wis. 42, 190 N. W. 901. The sum and substance of this case seems to be that the alleged libel was committed by the defendant herein The Curtis Publishing Company, that the plaintiff has brought suit against the proper corporation responsible for whatever damage he has suffered, but that service has not yet been made upon any officer or agent of that de-

fendant in Kentucky. On the contrary, the individual served is admittedly not an officer or agent of the defendant.

The defendant's motion to quash is sustained.