## SCHENSTROM v. CONTINENTAL MACHINES, Inc.

District Court, S. D. New York.
March 3, 1947.

Alley Cole Grimes and Friedman, of New York City, for plaintiff.

Charles Gottlieb, of New York City, for defendant.

RIFKIND, District Judge.

By an order to show cause defendant, Continental Machines, Inc., has brought on a motion to set aside the service of the summons on the ground that it was not served upon a person authorized to receive it under Rule 4(d) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.[1]

The summons and complaint were served by delivery to one, H. C. Alpaugh, on November 15, 1945, within the Southern District. The complaint alleges diversity of citizenship as the basis of federal jurisdiction.

The action is for breach of a contract alleged to have been made between the parties on September 1, 1944.

In order to understand the issues presented by this motion it is necessary to give a brief description of the method by which the defendant does business. Continental Machines, Inc., the defendant, is a Minnesota corporation, organized in 1928, and having its principal place of business in Minneapolis. It is controlled by members of the Wilkie family, who are its stockholders and directors. The DoAll Company is a partnership, composed substantially of the same members of the Wilkie family who are the stockholders and directors of the defendant. The part-

nership maintains offices in Minneapolis and in Des Plaines, Illinois. It was organized prior to July 1, 1945. DoAll International Company was not a legal entity at the time of the making of the agreement on September 1, 1944. It was the trade-name assigned by defendant to that branch of its business which was concerned with export trade. This condition continued until July 1, 1945. DoAll Eastern Company, Inc., is a New York corporation, maintaining offices in the City of New York. It was organized by defendant prior to July 1, 1945, to engage in business as a sales company for the New York area. It was controlled by members of the Wilkie family.

Before July 1, 1945, defendant engaged in the manufacture of machine tools, which it sold through sales corporations organized and doing business in the several states; and as stated, its export business was conducted through its division known by the trade-name DoAll International Company. On July 1, 1945, defendant entered into a contract with the partnership, the DoAll Company, pursuant to which the partnership became the exclusive sales outlet of defendant's products both in and outside the United States. All of defendant's goods were thereafter sold to the partnership. On July 1, 1945, the partnership entered into agreements with the various sales corporations, which had previously handled the defendant's products, whereby these corporations distributed the products of the defendant for the partnership. DoAll International Company, which had been a division of the defendant, became a division of the partnership.

H. C. Alpaugh, when served with the summons, was an employee of the partnership, the DoAll Company, in its export division. At no time was he an employee of defendant. His office was located at the premises of DoAll Eastern Company, Inc.

Plaintiff contends that "the activities of the partnership in New York City were carried on by it as the agent, instrumen-

---

[1] The motion was, in addition, based upon another ground consideration of which has been withdrawn from the court.

tality or adjunct of the defendant and were of such a nature as to confer jurisdiction on this court over defendant's person".

Defendant's motion to set aside service of the summons raises two questions: 1. Was defendant doing business in the state at the time of the service of process so as to make it amenable to the jurisdiction of this court. 2. If the answer be in the affirmative, did delivery of the summons to Alpaugh constitute service of defendant within Federal Rules of Civil Procedure, Rule 4(d) (3)?

■ Whether a foreign corporation is doing business within the state in such manner and to such an extent as to subject it to the jurisdiction of this court depends on the facts of each case. People's Tobacco Co., Ltd., v. American Tobacco Co., 1918, 246 U.S. 79, 86, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Carnegie Office Appliance Co. v. Thomas A. Edison, Inc., D.C.N.C. 1928, 28 F.2d 626, 628.

The agreement between the defendant and the partnership provides that whereas defendant is a manufacturer of machinery and the partnership is in the business of selling and distributing machine tools and is in a position to act as sole distributor and sales outlet of defendant's products, defendant agrees to sell to the partnership its products and the partnership agrees not to purchase such products from any one else. The prices to be paid by the partnership are set forth, subject to revision, depending upon the cost of manufacture to the defendant, so as to warrant a reasonable profit to the defendant. On its part the partnership agrees to advertise extensively and to pay the costs thereof, and to pay defendant for the products purchased, thirty days after receipt of invoices. There is nothing in the agreement which would insure the partnership against suffering loss in the sale of defendant's products.

■ It appears from the affidavits that the partnership carries on its business as a distinct entity, separate and apart from defendant, with all the indicia of a separate business, such as distinct books of account, distinct bank accounts, its own employees, its own offices and its own sales agencies or distributors throughout the United States, which solicit business and send their orders to the partnership for acceptance.

The most that plaintiff can claim is that the relationship between the defendant corporation and the partnership is that of parent-subsidiary. It has been held, however, that the use of a subsidiary through which to do business does not subject the parent corporation to the jurisdiction of the court in the territory where the subsidiary is located. Peterson v. Chicago, Rock Island & Pacific Ry. Co., 1907, 205 U.S. 364, 390, 27 S.Ct. 513, 51 L.Ed. 841; Amtorg Trading Corporation v. Standard Oil Co. D.C.S.D.N.Y.1942, 47 F.Supp. 466, 468. The mere ownership by a parent corporation of the stock of the subsidiary corporation, which is engaged in business in a state does not, in and of itself, constitute the doing of business in that state by the parent corporation. People's Tobacco Co., Ltd., v. American Tobacco Co., supra, 246 U.S. page 87, 38 S.Ct. page 235, 62 L. Ed. 587, Ann.Cas.1918C, 537; Moorehead v. Curtis Pub. Co., D.C.W.D.Ky.1942, 43 F. Supp. 67, 68.

The fact that, through the ownership of the stock of the subsidiary corporation, the parent corporation supervises, manages and controls the business of the subsidiary does not warrant the conclusion that the parent corporation is doing business in the state where the subsidiary does business. Seibert v. Lancaster Chocolate & Carmel Co., 6 Cir., 1928, 23 F.2d 233, 235. Nor can such an inference be drawn from the fact that the subsidiary sold the products of the parent. General Accident Fire & Life Assurance Corporation v. Goodyear T. & R. Co., Sup.Ct. N.Y.Co., 1940, 25 N.Y.S.2d 68, 70; Moorhead v. Curtis Pub. Co., supra, 43 F.Supp. page 69.

In order to have the presence of the subsidiary within the state constitute the presence of the parent within that state, it is not enough that the subsidiary is completely dominated by the parent both commercially and financially, provided the separation

"though perhaps merely formal, was real". Cannon Manufacturing Co. v. Cudahy Packing Co., 1925, 267 U.S. 333, 337, 45 S.Ct. 250, 251, 69 L.Ed. 634.

In the course of its opinion in that case, the court said:

"The existence of the [subsidiary] company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general [parent] business was doubtless adopted solely to secure to the defendant some advantage under the local laws. * * *

"The question is simply whether the corporate separation carefully maintained must be ignored in determining the existence of jurisdiction. * * *

"But whatever might be other legal consequences of the concentration, we cannot say that, for purposes of jurisdiction, the business of the [subsidiary] corporation * * * became the business of the defendant."

There have been instances where the presence of the subsidiary was held to constitute the presence of the parent. It has been so held where neither the form nor the substance of independent personality was preserved. American Chain Co., Inc., v. Stewart-Warner Speedometer Corporation, D.C.S.D.N.Y.1929, 56 F.2d 614; Murphy v. Campbell Soup Co., D.C.Mass. 1930, 40 F.2d 671, 673; Industrial Research Corporation v. General Motors Corporation, D.C.N.D.Ohio 1928, 29 F.2d 623, 625; Cutler v. Cutler-Hammer Mfg. Co., D.C. Mass.1920, 266 F. 388.

In the instant case the affidavits do not disclose such a merger of identities of the defendant and the partnership as to warrant the inference that the doing of business by the partnership within this state constitutes doing business on the part of the defendant corporation.

The problem which is presented by this case must be distinguished from the problem presented in cases involving substantive rights, wherein, jurisdiction having been established, corporate entities have been disregarded in order to do substantial justice. New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 442, 54 S.Ct. 788, 78 L.Ed. 1348; Canno Mfg. Co. v. Cudahy Packing Co., supra, 267 U.S. page 337, 45 S.Ct. page 251, 69 L.Ed. 634; Berkey v. Third Avenue R. Co., 1926, 244 N.Y. 84, 94, 155 N.E. 58, 50 A.L.R. 599.

Under the facts as they appear upon this motion, I conclude that the defendant was not doing business within this state, was not present, and was, therefore, not amenable to service of process.

It follows, moreover, that service on Alpaugh was insufficient to constitute service on defendant.

The motion to vacate the service of process is granted.